IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-00447-PAB-KLM

JASON SPARKS,
DEREK PARRIS, and
ALEKSEY KAZAKOV,

      Plaintiffs, and

DANIEL RAU,
BRYAN CORBIN, and
MICHAEL O'LOUGHLIN,

      Plaintiffs/Counterclaim Defendants

v.

DEVIN BREESE, and
TERRY BREESE,

      Defendants, and

DUNCAN RACE CARS, INC., doing business as Springs Auto & Truck Service Center, Inc.,

      Defendant/Counterclaim Plaintiff.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

      This matter is before the Court on **Plaintiffs' Motion for Leave to File First Amended Complaint** [#21][1] (the "Motion").  Defendants filed a Response [#27] to the Motion and Plaintiffs filed a Reply [#31] in further support of the Motion.  Pursuant to 28

_____

[1] "[#21]" is an example of the convention I use to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF).  I use this convention throughout this Recommendation.

1

U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1(c), the Motion has been referred to the undersigned for a recommendation regarding disposition [#22][2]. The Court has reviewed the Motion, the Response, the Reply, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion [#123] be **DENIED**.

## I. Background

### A.    Procedural Background

Plaintiffs initiated this lawsuit on February 20, 2014, bringing two claims against Defendants. *See generally Compl.* [#1]. Plaintiffs allege that they are automotive mechanics who were employed by Defendant Duncan Race Cars, Inc. at a repair shop named Springs Auto[3] located in Colorado Springs, Colorado. *Id.* ¶ 2. Plaintiffs further allege that Defendants "violated applicable wage and hour laws by Defendants' unlawful use of a 'flag rate' pay system . . . that failed to pay Plaintiffs for all time worked, failed to pay minimum wage for all hours worked each week, and failed to pay the legally mandated overtime rate for all hours worked in excess of 40 hours each week." *Id.* ¶ 12. Plaintiffs maintain that "Defendants also improperly deducted amounts from Plaintiffs' wages for certain costs of doing business, such as damaged automotive parts and shop equipment

---

[2] A magistrate judge may issue orders on nondispositive motions only. *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1461, 1462-63 (10th Cir. 1988). Whether motions to amend are dispositive is an unsettled issue. *Chavez v. Hatterman*, No. 06-02525-WYD-MEH, 2009 WL 82496, at *1 (D. Colo. Jan. 13, 2009) (collecting cases). When an order on a motion to amend removes or precludes a defense or claim from the case it may be dispositive. *Cuenca v. Univ. of Kan.*, 205 F. Supp. 2d 1226, 1228 (D. Kan. 2002). Thus, the Court assumes that the issue is dispositive and requires a recommendation.

[3] This is the business name of Defendant Duncan Race Cars, Inc. referred to herein as "Springs Auto." *See Compl.* [#1] ¶ 3; *Answer and Counterclaims* [#11] ¶ 3.

and unused repair parts." *Id.* ¶ 19.  Plaintiffs further allege that Defendants did not allow them to take uninterrupted meal and rest breaks and unlawfully charged them for the purchase and cleaning of company uniforms. *Id.* ¶¶ 21-22.  As a result, Plaintiffs bring one claim for alleged violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, (the "FLSA") and one claim for alleged violations of the Colorado Wage Law, Colo. Rev. Stat. § 8-4-101, *et seq.*, (the "CWL"). *Id.* ¶¶ 26-37.  Plaintiffs seek "unpaid time worked," "unpaid minimum wages," "compensation at the overtime rate for hours worked over 40 per week," compensation for "time worked through mandated meal and rest breaks," "pre- and post-judgment interest," "reasonable attorney fees," and costs. *Id.* ¶ 38.

On April 22, 2014, Defendants filed their Answer in which they asserted three counterclaims against certain Plaintiffs. *See generally Answer and Counterclaims* [#11].  In support of their counterclaims, Defendants allege that Plaintiffs Michael O'Loughlin ("O'Loughlin") and Bryan Corbin ("Corbin") each signed non-complete/non-disclosure agreements prohibiting them from competing against Springs Auto within a 15-mile radius for one year after their employment with Springs Auto ended. *Id.* ¶ 6.  Defendants allege that Plaintiffs O'Loughlin and Corbin have breached their non-compete/non-disclosure agreements by their employment at Peak Performance Automotive Services, LLC ("Peak Performance"). *Id.* ¶¶ 7-10.  Regarding Plaintiff Daniel Rau ("Rau"), Defendants allege that Rau "submitted flag sheets for work that was never performed and/or completed by him, but with the expectation that Springs Auto would pay him for those hours." *Id.* ¶ 12.  Defendants further allege that, as a result, Rau was paid for work that he did not complete. *Id.* ¶ 13.  As a result of these allegations, Defendants bring three counterclaims.  First, Defendant Springs Auto asserts a breach of contract claim against O'Loughlin and Corbin.

*Id.* ¶¶ 14-18.  Second, Defendant Springs Auto asserts an unjust enrichment claim against Defendant Rau.  *Id.* ¶¶ 19-233.  Third, Defendant Springs Auto asserts a claim of theft by deception against Defendant Rau.  *Id.* ¶¶ 24-30.

The parties are currently engaged in discovery.  *See generally Sched. Order* [#20].  Defendants served a subpoena *duces tecum* on Plaintiffs O'Loughlin and Corbin's current employer, Peak Performance.  *See generally Motion, Ex. 5* [#21-5] (subpoena); *Motion* [#21] at 9 ("Plaintiffs Sparks, Corbin, and O'Loughlin are employed at Peak Performance Automotive Services, and Plaintiffs Rau and Kazakov are owners at DNA Auto Repair."); *Response* [#27] at 3 ("After Plaintiffs Corbin and O'Loughlin quit their employment with Springs Auto, they became employed with Peak Performance Automotive Services, LLC.").  Peak Performance filed a motion for a protective order pursuant to Fed. R. Civ. P. 26, seeking entry of a protective order regarding the subpoena.  Peak Performance argues that the information requested in the subpoena is unrelated to the instant litigation.  *Motion for Protective Order Pursuant to Fed. R. Civ. P. 26(c)* [#23] at 3.  Peak Performance also filed a motion pursuant to Fed. R. Civ. P. 45.  In that motion, Peak Performance makes the same arguments and asks the Court to quash the subpoena.  *See Motion to Quash Subpoena Pursuant to Fed. R. Civ. P. 45(d)(3)* [#24] at 3.  Both of these motions are pending before the Court.

## B.    The Motion

In the Motion, Plaintiffs seek leave under Fed. R. Civ. P. 15 to file their proposed First Amended Complaint, which adds a claim for retaliation pursuant to the FLSA.  *Proposed Am. Compl.* [#21-1] ¶¶ 44-49.  In support of this claim, Plaintiffs allege that Defendants are trying to intimidate them by asserting "baseless counterclaims."  *Id.* ¶¶ 24-

4

26.   Plaintiffs further allege that Defendants "have engaged in a campaign to harass Plaintiffs' current and prospective employers by serving subpoenas on two local competitor automotive service businesses who are current or prospective employers of Plaintiffs" that seek irrelevant information which has "induce[d] emotional distress" on Plaintiffs. *Id.* ¶ 28. Plaintiffs also allege that they have been "force[d] to incur expenses and attorney fees to address the baseless counterclaims and the subpoenas seeking irrelevant and overbroad information . . . ." *Id.* ¶ 29.

Plaintiffs argue that the Motion should be granted under Fed. R. Civ. P. 15(a)'s "liberal standard" because the counterclaims "are baseless and retaliatory." *Motion* [#21] at 4, 6.  Specifically, Plaintiffs argue that a variety of documents "conclusively disprove" the two counterclaims asserted against Plaintiff Rau and aver that the counterclaims are "baseless as a matter of law." *Id.* at 7.   Therefore, Plaintiffs maintain that the "counterclaims constitute retaliation under the FLSA . . . ." *Id.*  With regard to the breach of contract counterclaim, Plaintiffs argue that "Colorado law strictly prohibits non-compete agreements" and that this counterclaim is therefore "baseless" and is retaliatory under the FLSA.  *Id.* at 8-9.  Plaintiffs further argue that the subpoenas served by Defendants on Peak Performance and "DNA Auto" "are an attempt to obtain irrelevant information for the purpose of (1) retaliating against Plaintiffs to intimidate them into abandoning legitimate wage claims for fear of antagonizing their actual or prospective employers, and (2) obtaining trade secret information from Defendants' competitors." *Id.* at 10-11.[4]

---

[4]  The Court does not address Plaintiffs' arguments about the scope of the subpoenas or other arguments that are more properly addressed in the Motion for Protective Order Pursuant to Fed. R. Civ. P. 26(c) [#23] and the Motion to Quash Subpoena Pursuant to Fed. R. Civ. P. 45(d)(3) [#24].

In their Response, Defendants offer a variety of factual allegations and make arguments, discussed below, regarding the Local Rules.  Focusing on the standard for amendment under Rule 15, Defendants argue that the Motion should be denied because amendment would be futile.  *Response* [#27] at 9-13.  Specifically, Defendants argue that their counterclaims can not form the basis for a retaliation claim because Plaintiffs cannot demonstrate that filing of the counterclaims would dissuade a reasonable employee from making or supporting a claim against an employer.  *Id.* at 10-11.  Further, Defendants maintain that Plaintiffs cannot demonstrate that Defendants' reasons for bringing the counterclaims are a pretext for retaliation.  *Id.* at 11-13.  In addition, Defendants argue that the subpoenas they served on Peak Performance and DNA Auto do not constitute retaliation under the FLSA as "they are not adverse action sufficient to support a retaliation claim here because they would not dissuade a reasonable employee from pursuing claims."  *Id.* at 13.  Defendants maintain that the subpoenas have a factual basis.  *Id.*

In their Reply, Plaintiffs offer certain arguments regarding the Local Rules, which are addressed below.  In addition, Plaintiffs revisit their argument that the counterclaims are baseless and retaliatory.  *Reply* [#31] at 5.  Plaintiffs further argue that the subpoenas served on the two nonparties are retaliatory.  *Id.*

## II.  Local Rules

In this case the Court has twice previously reminded the parties about the Local Rules of this Court.  At the June 26, 2014 Scheduling Conference, the Court noted that the proposed Scheduling Order was not double-spaced nor in 12-size font.  *See Sched. Order* [#20] at 1 ("Why is this pleading not double-spaced and in font size 12, pursuant to Local Rule 10.1?").  After the instant Motion was filed, when ruling on a contested motion filed by

Plaintiffs, the Court stated:

> As an initial matter, **any future filing that does not comply with any applicable rule will be stricken**. . . .
>
> "[T]o satisfy the requirements of Rule 7.1[(a)], the parties must hold a conference, possibly through the exchange of correspondence but preferably through person-to-person telephone calls or face-to-face meetings, and must compare views and attempt to reach an agreement, including by compromise if appropriate." *Hoelzel v. First Select Corp.*, 214 F.R.D. 634, 636 (D. Colo. 2003). The point of the conferral requirement is to have the parties exchange ideas regarding the requested relief and, hopefully, eliminate through discussion or compromise any issues they can before filing a motion so as to limit the issues brought before the Court. *See Carroll v. Allstate Fire and Casualty Ins. Co.*, No. 12-cv-00007-WJM-KLM, 2013 WL 5769308, at *4 (D. Colo. Oct. 24, 2013) ("The purpose of Rule 7.1[(a)] is to decrease the number and length of motions filed in each case."). The Motion is subject to denial for Plaintiffs' violation of Rule 7.1(a).

*Minute Order* [#42] at 2. On October 1, 2014, the Court struck a motion filed by Defendants for failure to sufficiently confer pursuant to Local Rule 7.1. *Minute Order* [#48] at 2.

In the instant Motion, Plaintiffs state:

> Plaintiffs' counsel hereby certifies that he has sought agreement with opposing counsel for leave to file the First Amended Complaint, both in writing and by telephone conversation, and that consent has not been granted.

*Motion* [#21] at 1. In their Response, Defendants argue that Plaintiffs' counsel did not confer with them. They state:

> Neither Mr. Anderson nor his co-counsel, Eric Dirks, ever informed Ms. Heinicke that Plaintiffs intended to file Plaintiffs' Motion, much less requested Defendants' position on Plaintiffs' Motion.

*Response* [#27] at 8. In their Reply, Plaintiffs argue that in email correspondence Plaintiffs informed Defendants that if Defendants did not agree to withdraw the two subpoenas, "we intend to move to quash, and also to move to amend to add a retaliation claim to the Complaint." *Reply* [#31] at 2 (quoting *Response, Ex. G* [#27-7] (emphasis omitted)).

7

Plaintiffs further allege that their counsel spoke to Defendants' counsel about the "subpoenas and the claims and defenses in the case, including Plaintiffs' belief that Defendants' litigation conduct was retaliatory." *Id.*

First, as the Court has repeatedly reminded the parties in this case, "to satisfy the requirements of Rule 7.1[(a)], the parties must hold a conference, possibly through the exchange of correspondence but preferably through person-to-person telephone calls or face-to-face meetings, and must compare views and attempt to reach an agreement, including by compromise if appropriate." *Hoelzel*, 214 F.R.D. at 636. Rule 7.1 is an important rule because it requires the parties to discuss any disputes before bringing them to the Court's attention. It is unacceptable for any party to file a motion without sufficiently conferring with the opposing party. **This requires full disclosure of the basis for the motion the party intends to file so the opposing party can make its position clear.** Here, it appears that the parties are playing semantic games in their pleadings. For example, Plaintiffs claim in the Motion that "Plaintiffs' counsel . . . sought agreement with opposing counsel for leave to file the First Amended Complaint, both in writing and by telephone conversation, and that consent has not been granted." *Motion* [#21] at 1. However, after Defendants challenged this assertion, Plaintiffs provided more detail in their Reply, noting that they informed Defendants that if Defendants did not agree to withdraw the two subpoenas, "we intend to move to quash, and also to move to amend to add a retaliation claim to the Complaint." *Reply* [#31] at 2 (quoting *Response, Ex. G* [#27-7] (emphasis omitted)). Plaintiffs further allege that their counsel spoke to Defendants' counsel about the "subpoenas and the claims and defenses in the case, including Plaintiffs'

belief that Defendants' litigation conduct was retaliatory." *Id.* Informing opposing counsel that failure to comply with a request to withdraw subpoenas will result in a party moving to amend the complaint to add a retaliation claim does not constitute conferral. Similarly, informing opposing counsel that "Plaintiffs' belie[ve] that Defendants' litigation conduct [is] retaliatory," *id.*, does not constitute conferral. Conferral requires discussion about the content and basis of the motion and, if it is a motion to amend, the specific proposed amendments.

As noted above, the parties have been warned repeatedly that they must confer about the content of any motion before it is filed. They may not play semantic games with the Court in lieu of actually informing the opposing parties of the basis for a motion. However, Defendants do not argue, and there is no evidence to suggest, that further conferral would have resulted in resolution of the issues raised in the Motion, the Response, or the Reply. Further, striking the Motion or denying it without prejudice may simply result in it being re-filed after counsel engages in further conferral, which would waste the Court's and the parties' resources. Accordingly, in the interest of expedience and judicial efficiency, the Court will consider the merits of the Motion. **However, the parties are warned that failure to engage in meaningful conferral regarding any motion filed in this case or violation of any applicable rule or practice standard may result in the striking of any such filings without further notice or imposition of other sanctions.**

### III. Analysis

As a preliminary matter, the Scheduling Order governing this case provides that the deadline for joinder of parties and amendment of pleadings was July 21, 2014. *Sched.*

*Order* [#20] § 9(a).  The Motion was filed on July 14, 2014.  Therefore, Plaintiffs' request to file an amended complaint is timely.  The Court thus considers any arguments raised by the parties related to whether justice would be served by amendment.  Specifically, the Court should grant leave to amend "freely . . . when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Leave to amend need not be given, however, when the moving party unduly delayed, failed to amend despite ample opportunity to do so, the nonmoving party would be unduly prejudiced, or amendment would be futile.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Here, Defendants argue that amendment is futile because Plaintiffs' proposed retaliation claim fails as a matter of law.  *Response* [#27] at 9-13.

## A.    Futility

An amendment is futile if it would not survive a motion to dismiss.[5]  *Innovatier, Inc.*

---

[5]  As relevant here, the purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6) (A complaint may be dismissed for "failure to state a claim upon which relief can be granted.").  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Sutton v. Utah State Sch. for the Deaf & Blind,* 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).  To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'"  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570); *see also Shero*, 510 F.3d at 1200 ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 570)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (internal quotation marks omitted).  The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level."  *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a factual allegation has been stated, "but it has not shown that the pleader is entitled to relief," as required by Fed. R. Civ. P. 8(a).  *Iqbal*, 129 S. Ct. at 1950 (quotation marks and citation omitted).

*v. CardXX, Inc.*, No. 08-cv-00273-PAB-KLM, 2010 WL 148285, at *2 (D. Colo. Jan.8, 2010) (citing *Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004)).   Accordingly, the Court must examine Plaintiffs' proposed FLSA retaliation claim applying the Fed. R. Civ. P. 12(b)(6) standard to determine if amendment is futile.

Section 215 of the FLSA prohibits certain acts, including, discharging or discriminating "against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter . . ." 29 U.S.C. § 215(a)(3).   "FLSA retaliation claims are analyzed under the familiar three-pronged *McDonnell Douglas* framework."   *Pacheco v. Whiting Farms, Inc.*, 365 F.3d 1199, 1206 (10th Cir. 2004) (citation omitted); *see also Hamby v. Associated Ctrs. for Therapy*, 230 F.App'x 772, 785 (10th Cir. 2007).   "Under the first prong of the *McDonnell Douglas* framework, the employee[s] must establish a prima facie case of retaliation by demonstrating (1) [they] engaged in protected activity[6] under [the] FLSA, (2) [they] suffered an adverse employment action contemporaneous with or subsequent to the protected activity, and (3) a causal connection between the protected activity and the adverse employment action."   *Id.* (citation omitted).   "An employee cannot establish a prima facie case of retaliation without an adverse employment action."   *Saville v. Int'l Bus. Machines Corp.*, 188 F.App'x 667, 669 (10th Cir. June 21, 2006) (citing *Pacheco*, 365 F.3d at 1206). In support of their proposed FLSA retaliation claim, Plaintiffs allege that they "are former[7]

---

[6] The parties do not discuss the first prong, but the Court notes that filing a claim under the FLSA is a protected activity.   *See Hamby v. Associated Ctrs. for Therapy*, 230 F.App'x 772, 785 (10th Cir. 2007).

[7] Former employees may bring FLSA claims.   *Rutherford v. Am. Bank of Commerce*, 565 F.2d 1162, 1165-66 (10th Cir. 1977) (approving *Dunlop v. Carriage Carpet Shop*, 548 F.2d 139 (6th Cir. 1977) in a Title VII case ("There is nothing in the language or history of [the FLSA] to indicate

employees of Defendants within the scope of the" FLSA. *Proposed Am. Compl.* [#31-1] ¶ 45. Notably, they do not allege that their employment was terminated by Defendants because of the filing of this lawsuit, nor do they allege that they were constructively discharged because of their filing of this action. *See, e.g., Saville*, 188 F.App'x at 669-70 ("Saville's retirement from IBM would qualify as an adverse action only if IBM deliberately made or allowed Saville's working conditions to become so intolerable that he had no other choice but to retire."); *Lockheed Martin Corp. v. Admin. Review Bd., U.S. Dep't of Labor*, 717 F.3d 1121, 1133 (10th Cir. 2013) (discussing standard for establishing constructive discharge). Accordingly, the Court must determine whether Plaintiffs have alleged an alternative adverse action, so as to make their retaliation claim viable.

In *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006), the Supreme Court considered the anti-retaliation provision of Title VII, which is substantially similar to the FLSA's anti-retaliation provision, and concluded that Title VII's "antiretaliation provision's objective would not be achieved" if the standard applied "focus[ed] only upon employer actions and harm that concern employment and the workplace," because "[a]n employer can effectively retaliate against an employee by taking actions not directly related to his employment or by causing him harm outside the workplace." *Id.* at 63. The Court explained that an action taken by an employer is retaliatory if "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a[n]" FLSA

---

that Congress intended to penalize dissatisfied employees who voluntarily leave an employer by thereafter denying them the protections of" the FLSA.)); *cf. McBride v. Peak Wellness Ctr., Inc.*, 688 F.3d 698, 705-06 (10th Cir. 2012) (discussing FLSA claim brought by former employee).

complaint.  *Id.* at 86; *cf. McBurnie v. City of Prescott*, 511 F.App'x 624, 624-25 (9th Cir. 2013) (applying *Burlington* standard to FLSA retaliation claim).  The Court went on to make clear that this is an "objective standard" that looks at "the reactions of a *reasonable employee . . . .*" *Id.* (emphasis in original).  Neither the Supreme Court nor the Tenth Circuit has explicitly discussed *Burlington* in the context of the FLSA's retaliation provision. Nevertheless, for purposes of this discussion, the Court assumes without deciding that if Plaintiffs assert post-employment conduct that would have dissuaded a reasonable employee from making or supporting an FLSA claim, they have sufficiently alleged retaliatory conduct.  However, as explained below, even assuming that the *Burlington* standard applies to Plaintiffs' proposed FLSA retaliation claim, Plaintiffs' proposed claim would nevertheless fail as a matter of law and the proposed amendment is therefore futile.

### 1.    Counterclaims

This Court has previously held that the assertion of a counterclaim by an employer in a Title VII case, by itself, may not form the basis of a retaliation claim under Title VII. *Robinson v. Dean Foods Co.* No. 08-cv-01186-REB-CBS, 2009 WL 2382764, at *4-5 (D. Colo. July 30, 2009).  Specifically, the Court explained:

> When an employee initiates the litigation, a counterclaim cannot dissuade the employee from making a charge of discrimination, by filing a lawsuit, because the charge necessarily must be made before the employer can file a counterclaim.  Thus, a counterclaim falls within the *Burlington Northern* definition of adverse action only if the counterclaim "could well dissuade a reasonable worker from . . . supporting a charge of discrimination."

*Id.* at 4 (quoting *Burlington*, 548 U.S. at 57); *see also Beltran v. Brentwood N. Healthcare Ctr., LLC*, 426 F.Supp.2d 827, 833 (N.D. Ill. 2006) ("We recognize than an employer's lawsuit filed with a retaliatory motive rather than in good faith may constitute an adverse

action and provide a basis for a retaliation claim.  But if the mere filing of a counterclaim were sufficient to give rise to a retaliation claim, then every defendant in an FLSA, Title VII or ADA lawsuit who asserts a counterclaim would be subject to a retaliation claim." (citation omitted)).  The Court noted that "[i]t is conceivable that a frivolous, baseless, or otherwise abusive counterclaim might form the basis for a retaliation claim." *Id.* at 5.  Here, Plaintiffs argue that the counterclaims are baseless and, therefore, are retaliatory. *Motion* [#21] at 6-9.  Plaintiffs further argue that the subpoenas served on Peak Performance and DNA Auto "are so overbroad and harassing as to be retaliatory." *Id.* at 9.  The Court, therefore, examines the counterclaims and subpoenas to determine whether they are so baseless as to rise to the level of legally-actionable retaliation.

### a.    Breach of Contract Counterclaim

Plaintiffs argue that Defendants' breach of contract claim is baseless because it is "prohibited by Colorado's strict ban on non-compete agreements." *Motion* [#21] at 7.  In their Answer, Defendants allege that Plaintiffs O'Loughlin and Corbin each signed non-complete/non-disclosure agreements prohibiting them from competing against Springs Auto within a 15-mile radius for one year after their employment with Springs Auto ended. *Answer and Counterclaims* [#11] ¶ 6.  Defendants allege that Plaintiffs O'Loughlin and Corbin have breached their non-compete/non-disclosure agreements through their employment at Peak Performance Automotive Services, LLC ("Peak Performance"). *Id.* ¶¶ 7-10.  Colo. Rev. Stat. § 8-2-113(2) prohibits "[a]ny covenant not to compete which restricts the right of any person to receive compensation for performance of skilled or unskilled labor for any employer . . . ."  However, "[a]ny contract for the protection of trade secrets" is exempted from the statutory prohibition on covenants not to compete.  Colo.

14

Rev. Stat. § 8-2-113(2)(b).

Defendants have tendered to the Court the agreements entered into by Plaintiffs O'Loughlin and Corbin and argue that they are exempt from Colo. Rev. Stat. § 8-2-113(2)(b) because the agreements are for the protection of trade secrets. *Response* [#27] at 11-12. The two documents are titled "Employee Non-Compete/Non-Disclosure Agreement" and state that the "Employee acknowledges that during the course of my employ there may be disclosed to me certain trade secrets of the Company . . . ." *Response, Ex. A* [#27-1] at 1-2. The agreements identify trade secret information such as "customer lists, pricing data, sources of supply, financial data . . . ." *Id.* By signing the agreements, the employees agreed not to disclose trade secret information to future employers. *Id.* The agreements also restrict the employees from competing with the employer "during the period of employment and for a period of one year following termination of employment and within a fifteen (15) mile radius . . . ." *Id.* While the question of whether Defendants should prevail on the breach of contract counterclaim is not before the Court at this time, in light of the language of the agreements and Colo. Rev. Stat. § 8-2-113(2), the Court cannot conclude that the breach of contract counterclaim is baseless. Therefore, assuming that the Court should apply the *Burlington* standard to the FLSA retaliation claim and in keeping with *Robinson*, the Court finds that the assertion of the breach of contract counterclaim does not provide a sufficient basis for assertion of a retaliation claim.

### b.   Unjust Enrichment Counterclaim

Plaintiffs also argue that the two counterclaims brought against Plaintiff Rau are baseless. *Motion* [#21] at 7. Regarding Plaintiff Rau, Defendants allege that Rau worked

15

for Defendant Springs Auto "from approximately May 9, 2012 until December 19, 2012" and "submitted flag sheets for work that was never performed and/or completed by him, but with the expectation that Springs Auto would pay him for those hours." *Answer and Counterclaims* [#11] ¶¶ 11-12.  Defendants further allege that, as a result, Rau was paid for work that he did not complete. *Id.* ¶ 13. As a result, Defendant Springs Auto asserts an unjust enrichment counterclaim against Defendant Rau, *id.* ¶¶ 19-233, and a counterclaim of theft by deception against Defendant Rau. *Id.* ¶¶ 24-30.

As Defendants note, Fed. R. Civ. P. 13(a)(1) requires a party to state as a counterclaim at the time when it serves its Answer any claim it has against the opposing party if the claim "(A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction."  Defendants argue that their two counterclaims against Defendant Rau are "alternative theor[ies] of liability" relating to the "overpayment of wages made to Rau" and that they need discovery in order "to determine Rau's motives" and, therefore, to determine which counterclaim is properly asserted in this case. *Response* [#27] at 12.  In the Scheduling Order, Defendants state that the counterclaims against Plaintiff Rau "are based on his submission of flagged hours for work he asserted was performed in September 2012 but which Springs Auto later discovered was not completed by Mr. Rau." *Sched. Order* [#20] § 3(b).  They further state that Defendant "Springs Auto was required to pay another technician to complete the work that Mr. Rau represented he had performed and for which he was paid." *Id.*  Plaintiffs attach Plaintiff Rau's compensation agreement and invoices for September 2012 to support their contention that "Defendants' own records prove Mr. Rau was underpaid in September 2012, when they

16

allege he was overpaid." *Motion* [#21] at 7 (emphasis omitted).

"A person is unjustly enriched when he benefits as a result of an unfair detriment to another." *Lewis v. Lewis*, 189 P.2d 1134, 1141 (Colo. 2008) (citation omitted). "[A] party claiming unjust enrichment must prove that (1) the defendant received a benefit (2) at the plaintiff's expense (3) under circumstances that would make it unjust for the defendant to retain the benefit without commensurate compensation." *Id.* (citation omitted). Here, Plaintiffs argue that this counterclaim is frivolous based on documents they provide relating to Plaintiff Rau's alleged work in September 2012. However, while Defendants focused on September 2012 in the Scheduling Order, the allegations regarding Plaintiff Rau in the Answer and Counterclaims are general and not limited to September 2012. Further, discovery is on-going. At this juncture, pursuant to *Robinson*, the Court may only consider whether these counterclaims are so baseless as to provide a basis for a retaliation claim. Due to the current status of the case, the Court will not read into the Answer and Counterclaims a time limitation, as Plaintiffs ask the Court to do. Therefore, the documents provided by Plaintiffs do not definitively establish that the unjust enrichment counterclaim is baseless. As a result, assuming that the Court should apply the *Burlington* standard to the FLSA retaliation claim and in keeping with *Robinson*, the Court finds that the assertion of the unjust enrichment counterclaim does not provide a sufficient basis for assertion of a retaliation claim.

### c.   Civil Theft Counterclaim

Colo. Rev. Stat. § 18-4-405 governs civil theft claims. To state a claim for civil theft, Defendants must allege that Mr. Rau "knowingly obtained control over [their] property without authorization" and he "did so with the specific intent to permanently deprive [them]

17

of the benefit of the property." *Huffman v. Westmoreland Coal Co.*, 205 P.3d 501, 509 (Colo. 2009).   "[A] claim under the civil theft statute requires proof that the property was taken with the specific intent to permanently deprive the owner of the benefit of the property." *Procom Supply, LLC v. Langner*, No. 12-cv-00391-MSK-KMT, 2012 WL 4856724, at *5 (D. Colo. Oct. 11, 2012) (citations omitted).   In addition, the Colorado Supreme Court has held that such a "theft" may "occur when one takes property without the owner's authorization" or when "the property is taken by deception, even with the owner's authorization." *West v. Roberts*, 143 P.3d 1037, 1040 (Colo. 2006).   Further, money is recoverable "property" under the statute.   *See, e.g., Rhino Fund, LLLP v. Hutchins*, 215 P.3d 1186, 1195 (Colo. App. 2008) (noting that proceeds from sale of goods "constituted 'property obtained by theft'" under Colo. Rev. Stat. § 18-4-405); *Cedar Lane Invs. v. Am. Roofing Supply of Colo. Springs, Inc.*, 919 P.2d 879, 882 (Colo. App. 1996) ("The stolen property that American Roofing seeks to recover is the money Allan Capps used to purchase and improve the real estate."); *cf. Oilman Int'l, FZCO v. Neer*, No. 10-cv-02810-PAB-BNB, 2012 WL 2871701, at *2 (D. Colo. June 7, 2012) (discussing civil theft claim for stolen money brought against third party).   As noted above, Defendant Springs Auto alleges that Plaintiff Rau deceived it into paying him for work he did not perform. Based on these allegations, the Court cannot conclude at this point that this counterclaim is baseless.   Therefore, assuming that the Court should apply the *Burlington* standard to the FLSA retaliation claim and in keeping with *Robinson*, the Court finds that the assertion of the civil theft counterclaim does not provide a sufficient basis for assertion of a retaliation claim.

### B.    Subpoenas to Third Parties

Plaintiffs also allege that the subpoenas served on third parties Peak Performance and DNA Auto are retaliatory because they demand "irrelevant and overbroad information" and seek "competitive information" and, as a result, the subpoenas are "intended to harass and intimidate Plaintiffs and to invade competitors' businesses." *Motion* [#21] at 9. As noted above, Plaintiffs do not allege that their employment was terminated by Defendants because of Plaintiffs' filing of this lawsuit, nor do they allege that they were constructively discharged because their filing of this action. *See, e.g., Saville*, 188 F.App'x at 669-70 ("Saville's retirement from IBM would qualify as an adverse action only if IBM deliberately made or allowed Saville's working conditions to become so intolerable that he has no other choice but to retire."); *Lockheed Martin Corp.*, 717 F.3d at 1133 (discussing standard for establishing constructive discharge). In addition, it is unclear whether the standard applied in *Burlington* to Title VII retaliation claims is applicable in this circuit to FLSA retaliation claims. However, in order to provide a complete analysis, the Court will briefly address this issue.

In *Burlington*, the Supreme Court explained that an action taken by an employer is retaliatory if "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a[n]" FLSA complaint. *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 86. The Court went on to make clear that this is an "objective standard" that looks at "the reactions of a *reasonable* employee . . . ." *Id.* (emphasis in original).

Here, Plaintiffs' argument is based on the content of the subpoenas. However, the motions filed by Peak Performance pursuant to Rules 45 and 26 are stilling pending before the Court. The instant Motion is not the appropriate vehicle through which to challenge the

19

content of the subpoenas.   Further, if Plaintiffs believe Defendants have abused the discovery process, the Federal Rules of Civil Procedure provide remedies for such abuse. See Fed. R. Civ. Pro. 26(c), 45(d).

Plaintiffs also argue that by subpoenaing competitors who hired them, Defendants are retaliating against them. *Motion* [#21] at 13-14.   However, the cases Plaintiffs cite in support of this argument are easily distinguishable.   For example, in *Rutherford*, 565 F.2d 1162, a pre-*Burlington* Title VII case, it was alleged that the plaintiff's former boss told a potential new employer that the plaintiff brought a Title VII claim against the former employer. *Id.* at 1164-65.   The plaintiff believed that if not for that discussion, she would have been hired by the potential new employer. *Id.*   The Tenth Circuit affirmed the trial court's entry of judgment in the plaintiff's favor. *Id.* at 1166. *Rutherford* does not stand for the proposition that service of a subpoena on a third party who is the plaintiff's new employer amounts to retaliation.   Calling a potential employer to indicate that the potential employee filed a claim against her former employer is very different from seeking discovery from a former employee's new employer, especially when there are allegations that the former employee breached a non-compete/non-disclosure agreement. *See Answer and Counterclaims* [#11] ¶¶ 14-18.   While the Court is cognizant of the risk of retaliatory conduct by a new employer who learns through the discovery process that an employee brought an FLSA claim against a former employer, the Court cannot conclude that service of subpoenas on Plaintiffs' new employers amounts to baseless retaliation under the circumstances present here.   Again, the Court's determination at this stage is whether the subpoenas are "baseless" and therefore constitute retaliatory conduct as Plaintiff alleges. *See Motion* [#21] at 13-14.   Based on the information currently before the Court, the Court

20

cannot conclude that the service of subpoenas on Plaintiffs' current employers constitutes retaliatory conduct.

Furthermore, there is no reason to believe that service of the subpoenas would have "dissuaded a reasonable worker from making or supporting a[n]" FLSA complaint. *Burlington N. & Santa Fe Ry. Co*, 548 U.S. at 86.  The Court finds that engaging in third-party discovery relating to the claims at issue in the case would not dissuade a reasonable employee from continuing to pursue an FLSA retaliation claim; indeed, Plaintiffs in this case do not appear to be dissuaded from pursuing their claims.  Therefore, assuming that the Court should apply the *Burlington* standard to the FLSA retaliation claim and in keeping with *Robinson*, the Court finds that service of the subpoenas does not provide a sufficient basis for a retaliation claim.

Because the Court concludes that neither the counterclaims nor service of subpoenas on third parties provides a basis for Plaintiffs' proposed retaliation claim, the Court agrees with Defendants that allowing the proposed amendment of the Complaint would be futile.  *See Foman*, 371 U.S. at 182 (explaining that leave to amend need not be given when the moving party unduly delayed, failed to amend despite ample opportunity to do so, the nonmoving party would be unduly prejudiced, or amendment would be futile.).

## IV.  Conclusion

For the foregoing reasons, the Court respectfully **RECOMMENDS** that the Motion [#21] be **DENIED**.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written

objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  October 21, 2014

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge